*157 OPINION OF THE COURT
Frank M. Klinger, J.
The question presented in this case is one upon which there is a remarkable lack of statutory or case law in New York State, which is all the more remarkable inasmuch as this case presents a question which frequently occurs, to wit: if neither the transferor nor the transferee are incorporated, but rather were and are "d/b/a” (doing business as) a business, to what extent is the transferee of the business responsible for the transferor’s business debts?
This court has done very extensive research in a great many directions on this problem and found virtually no statutory or case law to speak of.
' The relevant facts are as follows: On May 3, 1983, one Joseph J. Lupa sold an insurance business to one Anthony R. Stachowicz. Whether the business was known as the Harrold-Lupa Agency, Joseph Lupa Agency, or simply Lupa Agency prior to May 3, 1983 is not clear, but the answer is not necessary for this decision. In any event, beginning on or about May 3, 1983 the defendant Stachowicz took over doing business as the "Harrold-Lupa Agency” and apparently filed a certificate doing business as such. The May 1983 purchase agreement, however, apparently called for the payment of the purchase price over a long term. As of August 24, 1985, Stachowicz, although lawfully doing business as the "Harrold-Lupa Agency”, was apparently in default. On August 24, 1985 Joseph J. Lupa repurchased the insurance business and all of Stachowicz’ rights to this insurance business which had been known as the "Harrold-Lupa Agency”, renamed it the "Joseph Lupa Agency” and continued the business under the name of the "Joseph Lupa Agency”.
One of the customers of the Harrold-Lupa Agency was the plaintiff who had purchased a policy of business insurance from the Harrold-Lupa Agency. The carrier or insurer was the General Accident Corporation. However, significantly, the plaintiff paid his premiums to the Harrold-Lupa Agency.
In 1985 the plaintiff decided for reasons not here relevant to cancel the policy. It is conceded by both defendants that the plaintiff was entitled to receive a refund of $245 for overpayment of the premium.
The defendant Stachowicz stated that he never received the $245 from General Accident and therefore could not pay it to the plaintiff. He contends that if the money was "received” at *158 all, it would have been "received” on September 15, 1985, at which time he no longer owned the business.
However, the defendant Joseph Lupa testified, and I accept his word for the fact, that the credit was due to the plaintiff on June 3, 1985.
An accounting dated July of 1985 was sent by the General Accident to the Harrold-Lupa Agency showing bills on 11 accounts and a credit on 2 accounts including that of the plaintiff for $245. The effective date of the credit for the plaintiff is stated on that accounting sheet to be July of 1985.
It is true that there is some language at the top right-hand portion of this accounting sheet which states "due not later than 9-15-85”. This language, however, to me implies that the premiums on the 11 accounts were due not later than September 15, 1985, but does not imply to this court that the Lupa Agency did not receive its credit on the stated effective date of the credit, to wit: July 1985. Joseph Lupa testified quite credibly in this court’s judgment, that in that business, cash payments are never made to the agency for refunds — a credit is simply given.
Although neither defendant in this small claims action has raised the defense of "agency”, a fact which in and of itself implies that the defendants are aware that the Harrold-Lupa Agency was an independent entity, itself responsible to the plaintiff for what was owed to him, nonetheless we must consider the question of whether an insurance agency, in a case such as this, can avoid responsibility to the plaintiff, on the grounds not here raised — that it is simply an agent of the General Accident Corporation.
We note from the purchase agreement that the Lupa Agency under both names sold insurance for a number of carriers, not simply the General Accident alone. More compelling, however, is the fact that the plaintiff paid his premiums not to the General Accident Corporation but to the Harrold-Lupa Agency. Indeed, it was the Harrold-Lupa Agency, not General Accident, who in fact on August 16, 1985 mailed a check to the plaintiff in the amount of $245, which Stachowicz stated in court was sent "in error”. In fact the check bounced and criminal charges were filed but an adjournment in contemplation of dismissal was granted based upon the District Attorney’s statement that his investigation indicated that there were sufficient funds to cover that check on the date that it was written. The criminal case may of course still be *159 prosecuted if the District Attorney moves to restore the case to the calendar.
The check itself, however, is a legal obligation and is evidence of the legal obligation owed at that time by the Harrold-Lupa Agency to the plaintiff. Even if the Harrold-Lupa Agency had not received the credit for this account effective July 1985, Stachowicz, doing business as the Harrold-Lupa Agency, still owed the money to the plaintiff, simply because the plaintiff was concededly entitled to the refund and the Harrold-Lupa Agency was the legal entity with whom the plaintiff had his contractual relationship and to whom the plaintiff paid his premium.
The more difficult question is whether judgment should also be granted against Joseph Lupa either individually or doing business as the Joseph Lupa Agency.
At first blush it would seem that morally speaking, Joseph Lupa is responsible. It is certainly close to unconscionable or against public policy for an insurance agency duly licensed by the State of New York to default upon its obligations and leave the innocent consumer with no recourse against the subsequent purchaser.
Here, however, we are into an equitable distinction without legal basis. There is of course nothing inequitable about the situation if the plaintiff recovers his judgment against Stachowicz. The situation appears grossly inequitable only if he cannot recover a judgment against Stachowicz. (We note further that although General Accident was not a party to this case, our decision by no means precludes a cause of action against General Accident to the extent that the plaintiff can establish the existence of the appropriate contractual and agency relationships.) However, I cannot lawfully grant judgment against Stachowicz only, but then grant judgment against Lupa if the plaintiff cannot enforce the judgment against Stachowicz — as such a procedure is in no way authorized. Either the plaintiff has a cause of action against Lupa for which I may grant judgment or he does not and that is the question.
There are a number of theories upon which liability can be alleged against Lupa.
First there is Joseph Lupa’s interest in the Harrold-Lupa Agency. An analysis of this argument, however, fails. Although Joseph Lupa is of the same last name as "Harrold-Lupa” (relationship, if any, to Joseph unknown to me), the *160 fact of the matter is that the evidence before me clearly and unalterably indicates that the business the "Harrold-Lupa Agency” was owned and run exclusively by Stachowicz who in fact was doing business as (d/b/a) the "Harrold-Lupa Agency”. The mere fact that Joseph Lupa may have been the previous (before May 3, 1983) owner of the business does not establish any liability on his part for the operation of the business known as the "Harrold-Lupa Agency” of which he was not doing business as.
If in fact Joseph Lupa received the credit for the $245 on September 15, 1985, after he had purchased the business, then liability to the plaintiff could be fastened upon the theory that the plaintiff was a third-party beneficiary of Joseph Lupa’s arrangements with General Accident or upon the theory of "unjust enrichment”. In other words if Joseph Lupa had received $245 on September 15 belonging to the plaintiff, he could not simply keep that amount. The proof, however, is that he did not receive any such cash — that in fact the Harrold-Lupa Agency received a credit for this amount effective July 1985.
The liability of the defendant Joseph Lupa, if it exists, therefore must be based upon the fact that he purchased the business on August 24, 1985.
The liability of successor corporations for purchase of a business is set forth in Grant-Howard Assoc. v General Housewares Corp. (63 NY2d 291). Nowhere, however, that I am aware in New York State statutory or case law is the liability for a successor doing business as set forth.
However, the book Business Acquisitions (1 Herz and Bailer, Transferee Liability, § 5.202g, at 158 [2d ed 1981]) indicates that creditors of a seller can enforce obligations assumed by the buyer under the contract of sale directly against the buyer. Did this contract of sale in fact provide for an assumption of liability to creditors of the business (of which the plaintiff was one) on the date of sale?
A reading of the entire contract of sale indicates that Stachowicz agreed to be fully responsible for "any and all claims of negligence or misconduct or errors committed by him prior of the execution of this agreement” (Stachowicz stated under oath that the sending of the check was an "error”).
Moreover, the agreement states that Stachowicz agreed to be fully responsible for all obligations incurred by him in *161 connection with the operation of a general insurance business except that Joseph Lupa "agrees to pay any obligation of * * * [Stachowicz] with respect to the insurance billings or unpaid premiums”.
The obligation to the plaintiff is not with respect to "unpaid premiums”. The plaintiff’s premiums were paid — indeed overpaid. The obligation was with respect to a credit to which the plaintiff is entitled.
Similarly, the obligation to the plaintiff is not with respect to any insurance billings. The term "insurance billing” to me implies a bill from an insurance carrier to the Lupa Agency— which is certainly not the basis of the plaintiff’s claim. The question of insurance billings is simply an issue which was unsuccessfully raised as a defense by the defendant Stachowicz. The plaintiff’s claim is lawfully based upon the credit to which he is entitled for cancellation of the policy — not any obligation with respect to an "insurance bill”.
The aforementioned volume Business Acquisitions (id., § 5.202g, at 158) goes on to state that the buyer "may become liable ex delicto for nonassumed liabilities at least to the extent of the value of the assets transferred to the buyer. There are several grounds on which such transferee liability may be imposed”.
The first of those grounds is a fraudulent transfer. A transfer may be fraudulent for 1 of 3 reasons: The retention of ownership by the seller, an actual intent to hinder, delay, or defraud creditors, or a transfer of assets for inadequate consideration by a seller who is either insolvent, or thereby rendered insolvent. There is no proof that this sale of August 24, 1985 falls within any of those three categories. Whether the seller was in fact insolvent or rendered insolvent, there is no indication that this transfer was for inadequate consideration or with intent to hinder, delay, or defraud any creditors. Even in Small Claims, the plaintiff has the burden of proof and the plaintiff here has not established or even alleged that the transfer from Stachowicz to Lupa was in any way a fraudulent transfer.
The next reason under which the transfer may be disallowed as to creditors is that of a "voidable preference” which can exist when an insolvent seller is heavily indebted to the buyer. Voidable preferences may be disallowed by a trustee in bankruptcy. However, in the case at bar there is no proof of insolvency or of voidable preference.
*162 Another ground for fastening liability upon the transferee occurs when the purchase price is payable in securities of the buyer — here not implicable.
The fourth ground for fastening debts of the business on to the transferee comes under the bulk sale statutes, under which the transferor must give notice to all creditors of the business of the sale or else the sale is ineffective against creditors of the business. Henn and Alexander, Corporations, states that "generally the bulk transfer law prevents the defeat of the interests of business creditors by the sale of a going concern” (§ 18, at 59 [3d ed 1983]).
This plaintiff, however, is not protected by the bulk sale law since that law covers only those whose transferor’s principal business is the sale of merchandise from stock. (UCC 6-102.)
The final ground as stated by Herz and Bailer for imposing liability upon the transferee is with respect to product liability claims, not here applicable (Herz and Bailer, op. cit. § 5.202g, at 158-163).
Thus, apart from the five situations described by Herz and Bailer, all inapplicable here, there appears to be no legal theory upon which liability for a transferor’s doing business as creditors can be fastened upon the transferee of the business. This would seem to be all the more clear when the transferee changes the name of the business. Despite the law cited herein, it would still seem logical and reasonable that if consumers see a business known as "Dave’s Donuts” and can sue and obtain a judgment against "Dave’s Donuts”, that they should be able to enforce that judgment against the business "Dave’s Donuts”, even if the business has changed hands — so long as it remains a donut business in the same location still under the name of "Dave’s Donuts”.
However, it seems to me that if the business name were to be changed, to say "Marie’s Donuts”, the mere fact that the new business is still selling donuts in the same location but under new ownership would not in and of itself give rise to a transfer of the liability for debts owing to Dave’s creditors on to Marie.
If this be a valid distinction, and it is simply one that is apparent to me for which I can cite no case law, then it similarly operates to the benefit of the defendant Joseph Lupa. The plaintiff was obviously aware of the distinct entities here involved. He wrote his check to the Harrold-Lupa Agency. He received the bad check from the Harrold-Lupa *163 Agency. In his lawsuit he named as defendants both the defendant Stachowicz and the defendant "Joseph Lupa d/b/a Joseph Lupa General Insurance Company”. The proof as well as the complaint show that the plaintiff obviously understood that the business had changed hands and that the Joseph Lupa Company was simply not the same entity as the Harrold-Lupa Company with whom he had done business.
For all of the above reasons I therefore grant judgment dismissing the plaintiff’s complaint as against Joseph Lupa doing business as the Joseph Lupa General Insurance Company.
Judgment is, however, granted against the defendant Stachowicz (formerly doing business as the Harrold-Lupa Agency) in the sum total of $282.89 (the amount owed to the plaintiff plus his proven costs and disbursements).
The parties have 30 days to appeal.